The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Mack H. THOMPSON,
Defendant–Appellee.

No. 89SA466.

Supreme Court of Colorado,
En Banc.

July 16, 1990.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Everett Engstrom, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, Virginia L. Grady, Deputy State Public Defender, Denver, for defendant-appellee.

Chief Justice ROVIRA delivered the Opinion of the Court.

The People bring this interlocutory appeal, pursuant to C.A.R. 4.1, to challenge an order by the Denver District Court granting the defendant's motion to suppress evidence seized from the defendant's motel room. We reverse.

I

On November 29, 1988, Denver police officials received information from a Federal Bureau of Investigation agent in Washington state that the defendant, Mack Thompson, was wanted pursuant to a fugitive warrant based upon a parole violation in the state of Washington. The agent provided a description of the defendant, indicated that he should be considered armed and dangerous, and stated that Thompson was registered at a motel under the name Jules White. Finally, the agent stated that Thompson was thought to be with two other men and a woman, all of whom were alleged to have been dealing heroin and cocaine from the motel.

Based upon this information, Bernard Montoya, and other Denver police officers, went to the motel and confirmed that a man fitting Thompson's description had registered under the name Jules White. The police arranged to have the defendant summoned to the front desk and then positioned themselves out of sight. As the defendant approached the desk, he observed the uniformed officers, and immediately fled back down the hall. He was apprehended in front of his room.

As the defendant was being apprehended, the door to his room opened and officers saw a woman who was later identified as Pamela Greer. They restrained her and made a cursory sweep of the room to insure that no one else was present. From the doorway, Montoya observed a plate containing a razor blade and a white substance, which he believed to be cocaine. Both the defendant and Greer were arrested and taken to the police station.

Two officers remained to secure the room while Montoya obtained a search warrant based upon his observations. The subsequent search of the room, conducted pursuant to the warrant, revealed two "false bottomed" canisters which contained 3.56 grams and 1.18 grams of cocaine, respectively. Thereafter, Thompson was charged with one count of unlawful distribution, manufacturing, dispensing, sale or possession of a controlled substance. § 18–18–105, 8B C.R.S. (1989 Supp.).

Following the defendant's arrest, Montoya obtained a teletype copy of the fugitive warrant from the National Crime Information Center computer. At this time, Montoya discovered that the warrant contained the notation "this warrant is entered into WACIC [Washington Crime Information Center] only. No extradition."

Prior to trial, Thompson moved to suppress the evidence seized from his motel room on the grounds that it was obtained as the result of an illegal arrest, and therefore should be suppressed as "fruit of the poisonous tree." The trial court held that because the warrant was only entered into the Washington system it was not a valid warrant for an arrest in Colorado; the mistake was not within the "good faith" exception contained in section 16–3–308, 8A C.R.S. (1986); and that the officers did not have probable cause for a warrantless arrest at the time they seized the defendant. The trial court also made supplemental findings of fact in which it concluded that the officers "utilized that warrant as an absolute pretext for the arrest because they had other information about the defendant and did not seek a warrant as to the other information." Finally, the trial court found, for purposes of appeal, that if there was probable cause to arrest the defendant, then the protective sweep of the room was justified "to see if there was a weapon in the immediate vicinity."

## II

The People contend that there was probable cause for the arrest of the defendant, based upon the officers' reasonable reliance on the outstanding fugitive warrant. It argues that the warrant was not invalidated by the "no extradition" provision it contained. Alternatively, the People assert that the exclusionary rule was inapplicable because the officers' conduct involved a "good faith mistake."

Colorado's extradition act authorizes the arrest of any person within this state pursuant to a warrant issued by a judge, upon the oath or affidavit of any credible person charging the accused with committing a crime in another state and having fled from that jurisdiction to this state. § 16–19–114, 8A C.R.S. (1986). The act also provides that:

> The arrest of a person may be lawfully made also by any peace officer or a private person without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year. When so arrested the accused must be taken before a judge with all practicable speed, and complaint must be made against him under oath setting forth the ground for arrest as in section 19–19–114; and thereafter his answer shall be heard as if he had been arrested on a warrant.

§ 16–19–115, 8A C.R.S. (1986).

■ To be valid, however, an arrest must be supported by probable cause. *See, e.g., People v. Villiard,* 679 P.2d 593 (Colo. 1984). Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to warrant the belief by a reasonable and prudent person, in light of that person's training and experience, that an offense has been committed and the defendant committed it. *See, e.g., People v. Roybal,* 655 P.2d 410 (Colo.1982); *People v. Vigil,* 198 Colo. 185, 597 P.2d 567 (1979). Probable cause is determined based upon the information possessed by the officer at the time of the arrest. Just as an arrest may not be validated by subsequently acquired information, it is not invalidated by such subsequent events. *State v. Cross,* 164 N.J.Super. 368, 374, 396 A.2d 604, 606–07 (1978). In evaluating probable cause, we have often stated that probability, not certainty, is the touchstone of reasonableness under the fourth amendment and that probable cause involves probabilities similar to the factual and practical questions of everyday life upon which reasonable and prudent persons act. *Roybal,* 655 P.2d at 410; *People v. Baird,* 172 Colo. 112, 470 P.2d 20 (1970). *See also Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

■ Probable cause may be based on the personal observations of the arresting officer, on facts provided to him by fellow officers or others, or by a combination of these types of information. The "fellow officer" rule provides that an arresting officer who does not personally possess sufficient information to constitute probable cause may nevertheless make a warrantless arrest if "(1) he acts upon the direction or as a result of a communication from a fellow officer, and (2) the police, as a whole, possess sufficient information to constitute probable cause." *People v. Baca,* 198 Colo. 399, 401, 600 P.2d 770, 771 (1979). For example, in *Evans v. Simonet,* 699 P.2d 1337 (Colo.1985), we held that information obtained from fellow officers or from another police agency, indicating that a warrant had been issued for the arrest of the accused, was sufficient to support an arrest and detention prior to the issuance of a formal requisition by the demanding state.

Here, Denver police officers relied on information from another law enforcement agency indicating that there was a fugitive arrest warrant for the defendant. Further, Montoya was provided with a detailed description of defendant, where he could be found, and the assumed name which he was using. This information was corroborated, prior to police contact with the defendant, by the desk clerk at the motel.

■ An outstanding arrest warrant from another jurisdiction is normally sufficient

in itself to provide the probable cause needed to make an arrest. *People v. Coto*, 199 Colo. 508, 510, 611 P.2d 969, 970 (1980). Officers are entitled to presume that an outstanding warrant is issued based upon probable cause and are not required to conclusively establish the validity of the warrant at the time of the arrest. *People v. Gouker*, 665 P.2d 113 (Colo.1983). "[T]he existence of an outstanding warrant provides a prima facie showing of probable cause, although the person arrested may challenge the validity of the arrest warrant at a post-arrest probable cause hearing." *Id.* at 116.

Here, the defendant does not contend that he is not in violation of his parole or that Washington officials lacked probable cause to issue the fugitive arrest warrant. The defendant's sole ground for challenging the validity of the warrant is that it contained the "no extradition" language. Thus, we must determine whether the warrant is invalid because of the inclusion of these words.

 The decision to extradite is often an administrative determination, taking into consideration the seriousness of the offense and the cost of extradition. For example, it is not unusual for a state to decline extradition after a fugitive has been arrested. Note, *Extradition Computer Technology and the Need to Provide Fugitives With Fourth Amendment Protection In Section 1983 Actions*, 65 Minn.L.Rev. 891 (1981). The demanding state may terminate extradition proceedings at any time prior to the return of the prisoner. *See Massey v. Wilson*, 199 Colo. 121, 124, 605 P.2d 469, 471 (1980). This action by the demanding state, however, does not invalidate the arrest of the fugitive in the asylum jurisdiction. Similarly, we conclude that the "no extradition" provision contained in the warrant, which was discovered after the defendant's arrest, is not a matter of constitutional magnitude, nor otherwise sufficient to invalidate the defendant's arrest.

 Finally, we consider the trial court's supplemental finding that the defendant's arrest pursuant to the fugitive warrant was an "absolute pretext." The court did not state the standard which it utilized in reaching this conclusion, nor specify how its conclusion was supported by the evidence presented at the suppression hearing.

In *People v. Gouker*, 665 P.2d 113, 117 (Colo.1983), we noted that "courts have uniformly required an objective standard for determining probable cause and we see no reason to depart from that standard...." The objective standard makes it unnecessary to engage in a subjective analysis of the officers' motives for making an arrest, when multiple investigations are involved.

Applying the objective standard, we conclude that the fugitive warrant for the defendant provided the police with probable cause to arrest him. Therefore, the evidence seized from the defendant's motel room was not "fruit of the poisonous tree." Accordingly, the trial court's ruling is reversed and the case remanded for further proceedings consistent with this opinion.