The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Phillip BARROS, Defendant–Appellant.

No. 90CA1369.

Colorado Court of Appeals, Div. A.

April 9, 1992.

Rehearing Denied May 7, 1992.

Certiorari Denied Aug. 31, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Charles F. Garcia, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge ROTHENBERG.

Defendant, Phillip J. Barros, appeals the judgment of conviction entered by the trial court finding him guilty of second degree burglary and theft. We affirm.

The following facts are undisputed. On April 1, 1990, police officer Eggleston was assigned to a Denver residential neighborhood that had experienced a series of burglaries. Officer Eggleston was patrolling the neighborhood in a marked "burglary suppression" car, and was routinely questioning individuals whom she observed in the alleys.

During her morning patrol, one citizen told the officer that there was a man in the adjacent alley who was carrying a sack but "didn't look like he was picking cans." Officer Eggleston drove to the adjacent alley to investigate, and, as she turned into the alley at a normal speed, she spotted a man, later identified as defendant Barros, standing halfway down the alley. He was carrying a large brown trash bag which appeared to be heavy. The officer testified that, in her experience, persons often use trash bags to carry stolen items. As soon as the man saw the police car, he immediately dropped the bag and fled in the opposite direction.

After the man ran, Officer Eggleston broadcast a report that a possible burglary or theft suspect was running westbound, and she described the suspect. She then exited her police vehicle and lifted the abandoned garbage bag into her car. In doing so she observed a VCR or stereo protruding from its bottom, and testified that its remaining contents appeared to be household goods. She further testified that this cursory view of the contents led her to believe that the items had been stolen from a home.

Officer Gallo, who was nearby in another police car, responded to the radio broadcast, and stopped one suspect (not Barros) in another alley. As Officer Eggleston was approaching that alley, Officer Gallo

radioed her that *another man* matching the suspect's description was running westbound across the alley, and he quickly apprehended and arrested that second man, who was Barros.

When Officer Eggleston arrived at the arrest scene, she confirmed that Barros was the person she had seen carrying the garbage bag full of household items.

Approximately thirty minutes after Barros' arrest, the police identified a residence which appeared to have been burglarized but there was a considerable delay in obtaining confirmation from the homeowner that a burglary had been committed. In the interim, Barros was interrogated at police headquarters and voluntarily confessed to the burglary.

Before trial, Barros moved to suppress his confession, claiming that it was the fruit of an illegal arrest. After an evidentiary hearing, the trial court denied his motion, finding that the police officer, "using common sense, intelligently, reasonably concluded that a burglary had been committed and that Mr. Barros committed it."

## I.

Barros contends that the trial court erred in denying his motion to suppress. We disagree.

Initially, we note that the trial court made certain findings which lack record support. Specifically, the trial court found that Officer Eggleston saw the suspect standing in the backyard of a residence holding the garbage bag and that she described the suspect as an Hispanic male in her broadcast. Further, the trial court found that the officer retrieved and viewed the contents of the garbage bag *before* airing her broadcast. We agree with defendant that the record does not support these three findings, and accordingly, we do not rely on them in reaching our decision. *See People v. Johnson*, 653 P.2d 737 (Colo.1982).

In addition, we note that the prosecution's evidence clearly established that Barros was arrested by Officer Gallo immediately upon his apprehension. Therefore, we do not consider the law regarding investigative stops.

In order to justify a warrantless arrest, the prosecution must prove that probable cause existed at the moment of arrest. *People v. Thompson*, 793 P.2d 1173 (Colo.1990). Probable cause to arrest exists if, when viewing the totality of the circumstances, an arresting officer possesses facts and information within his or her knowledge which would warrant a reasonable and prudent person to believe, in light of that person's training and experience, that the person arrested has committed or is committing a crime. *People v. Foster*, 788 P.2d 825 (Colo.1990). The information necessary to support a finding of probable cause need not rise to the level of certainty, *People v. Drake*, 785 P.2d 1257 (Colo.1990), but it must be based upon more than suspicion alone. *People v. Quintero*, 657 P.2d 948 (Colo.1983).

Probable cause is determined based upon the information which the arresting officer possesses at the time of the arrest, either through personal observation or information relayed to him by fellow officers. *People v. Thompson, supra.*

In *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983), our supreme court restated the fellow officer rule:

> We have held in warrantless arrest situations that an arresting officer who does not personally know facts that provide probable cause may still effect a warrantless arrest if he acts upon the direction or as a result of a communication from a fellow officer *and the police, as a whole, know facts which rise to the level of probable cause....*
>
> It is not necessary for the arresting officer ... to be himself in possession of information sufficient to constitute probable cause, provided he acts upon the direction or as a result of communication with [another] officer ... and provided *the police as a whole are in possession of information sufficient to constitute probable cause to make the arrest.* (emphasis added)

■ Importantly, the request by one officer that another officer arrest a suspect can be conclusionary. There are no "magic words" which must pass from officer to officer. *People v. Hazelhurst, supra. See also* 1 W. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 3.5 (1978).

■ Applying these principles to the facts of this case, we conclude that, at the moment of Barros' arrest, the arresting officer had the requisite probable cause based upon the information possessed by the police "as a whole." These facts include: (1) defendant's presence in the high crime area victimized by recent burglaries; (2) the information of suspicious activity by a citizen; (3) the first officer's experiential knowledge that garbage bags are often used to carry stolen items; (4) defendant's actions in dropping the garbage bag and fleeing immediately upon seeing the police car; and (5) the first officer's observations of the bag and its contents.

Barros stresses the fact that Officer Eggleston did not know what was in the trash bag when she radioed for assistance. Hence, he argues that the police lacked probable cause to believe that a crime had been committed. In our view, defendant's analysis is flawed.

■ In determining whether there was probable cause, the dispositive time was not when the first officer made the radio call for assistance; rather, it was the moment of Barros' arrest. *People v. Thompson, supra; People v. Hazelhurst, supra.* And, here, the record reflects that although Officer Eggleston did not observe the stereo, VCR, or household goods in the bag before she radioed for assistance, she did see those items before Barros was arrested by Officer Gallo.

That timing is apparent from the following testimony taken at the suppression hearing:

Question (by defense counsel): So, *at the time Mr. Barros was arrested* the only thing you had was a bag with some items that you had not even looked closely at; is that correct?

Answer (by officer): Well, I had looked at them enough to know that they were, like, household items, stereos. (emphasis added)

Finally, we reject Barros' contention that *People v. Quintero, supra;* and *People v. Schreyer,* 640 P.2d 1147 (Colo.1982) compel another result. In both of those cases, citizens reported suspicious activity to the police. However, neither case involved a high crime area, flight by the suspect immediately after seeing the police, or the abrupt abandonment of valuables without explanation other than the presence of a police car. We therefore agree with the trial court that Barros' arrest was based upon considerably more than the "mere suspicion" disapproved in *Quintero* and *Schreyer.*

II.

■ Barros next contends that the trial court committed reversible error by failing to advise him adequately of his right to testify at trial in accordance with the requirements of *People v. Curtis,* 681 P.2d 504 (Colo.1984). We disagree.

Basically, Barros argues that the trial court's advisement was defective because it did not warn him of the disadvantages of testifying. However, we rejected a similar contention in *People v. McMullen,* 738 P.2d 23 (Colo.App.1986), in which the defendant neither urged a lack of knowledge of the disadvantages of not testifying, nor claimed that his decision would have been different if he had been advised on the record concerning the disadvantages of testifying.

Since Barros similarly has not claimed either a lack of knowledge of the disadvantages of not testifying or that his decision would have been different if he had been so advised, and since the record here demonstrates that Barros voluntarily, intelligently, and knowingly waived his right to testify, we view *McMullen* as dispositive. *See also Roelker v. People,* 804 P.2d 1336 (Colo.1991).

The judgment of conviction is affirmed.

STERNBERG, C.J., concurs.

TURSI, J., dissents.

Judge TURSI dissenting.

I respectfully dissent

Because I am unaware of any authority which legitimizes a warrantless arrest based upon the fellow officer rule when the factual predicate necessary to create probable cause was unknown to the fellow officer at the time he requested the arrest, I would hold the arrest of defendant to be illegal and would suppress the evidence that flowed therefrom.

It is undisputed that at the time Officer Gallo arrested the defendant he was without any personal knowledge sufficient to constitute probable cause. Therefore, if the warrantless arrest is to be sustained, it must be justified under the fellow officer rule.

However, at the time Officer Gallo received Officer Eggleston's radio call, it is conceded that she did not have probable cause to arrest, nor did she request that the individual she had seen in the alley be arrested. Rather, she reported only that "a *possible* theft or burglary suspect" was running westward. Even if I were to assume that this report would have justified Officer Gallo in making an investigatory stop, it clearly did not justify the immediate arrest of defendant.

In *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983), the court held that: "The fellow officer rule is not a means to create probable cause by using 'post hoc' combinations of information available to the police." Indeed, as the court there again emphasized: "[A]n officer who *has* probable cause to arrest a suspect, may request that a fellow officer make the arrest...." (emphasis supplied)

Here, it is not seriously disputed that at the time Officer Eggleston reported "a possible theft or burglary suspect," she neither claimed nor professed to have probable cause to arrest the possible suspect.

Furthermore, even if we were to assume that the "post hoc" discovery of the contents of the bag by some mysterious manner became part of the collective knowledge of the police as a whole at the time of the request for stop, mere suppression based upon viewing the contents of the bag did not meet the standard for a warrantless arrest based upon probable cause. *See People v. Quintero*, 657 P.2d 948 (Colo. 1983); *People v. Schreyer*, 640 P.2d 1147 (Colo.1982).

Finally, I am not persuaded that the advisement given to the defendant regarding his right to testify is constitutionally adequate to avoid reversal as plain error under the principles of *People v. Curtis*, 681 P.2d 504 (Colo.1984).

The totality of the trial court's advisement was:

All right. Mr. Barros, under the Constitutions of the United States and Constitution of the State of Colorado, you have the right to testify if you want to. You also have the right not to testify. And whether or not you testify is your decision and your decision alone. While you, I'm sure, have talked with your attorney and can talk with him more, you should understand that the decision is entirely up to you.

Thereafter, defendant chose not to testify.

This record does not demonstrate that defendant voluntarily, intelligently, and knowingly waived his right to testify, *cf. People v. McMullen*, 738 P.2d 23 (Colo. App.1986), nor does it contain an adequate *Curtis* advisement as was given in *Roelker v. People*, 804 P.2d 1336 (Colo.1991).

Further, it does not comport with the *Roelker* restrictive holding that "the actual holding in *Curtis* limits the trial judge's responsibility to advising the defendant of his right to testify and the consequences of doing so." The trial court clearly failed to do the latter, and the record does not cure that failure.

Therefore, I would reverse and remand for a new trial consistent with the views expressed in this dissent.