22CA0180 Peo v Baldwin 01-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0180
City and County of Denver District Court No. 21CR1526
Honorable Martin F. Egelhoff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gary L. Baldwin,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE HAWTHORNE*
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Barbara A. Snow, Alternate Defense Counsel, Longmont, Colorado for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Gary L. Baldwin, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder.  Baldwin contends that the trial court erred by (1) responding to a jury question without first asking the jury if it was deadlocked and (2) denying his motion to suppress statements he made and evidence obtained following his arrest.  We disagree with both of Baldwin's contentions and, therefore, affirm.

## I.    Background

¶ 2    A video recording from a High Activity Location Observation (HALO) camera captured the shooting death of a victim in a park in downtown Denver.  The HALO video showed a black male fleeing the scene "wearing a red sweatshirt with a white hood, jeans[,] black shoes and a beanie."  A detective in an unmarked car saw someone matching that description walking away from the location where the shooting happened.  The detective followed the suspect and provided information on his movements to other police officers.  He also saw the suspect remove and dispose of the sweatshirt.  Uniformed police officers found the suspect, later identified as Baldwin, hiding in a stairwell near where the detective had last seen him and arrested him.  The police later recovered the sweatshirt

and discovered a gun wrapped in it.  The prosecution charged Baldwin with first degree murder.

¶ 3     Before his trial, Baldwin moved to suppress the statements and evidence obtained following his detention and arrest.  The court denied his motion, finding that the police had a reasonable suspicion to stop him and probable cause to arrest him.  Following a five-day trial, the jury found Baldwin guilty of the lesser included offense of second degree murder.

## II.     The Trial Court Properly Answered the Jury's Question During Deliberations

¶ 4     Baldwin contends the trial court committed reversible error by responding to the jury's question about returning a guilty verdict on a lesser included offense when it had not unanimously agreed on a greater offense without first asking the jury if it was deadlocked.  He argues that the court's response was premature and potentially coerced the jury into finding him guilty of the greater offense.  We perceive no error in the trial court's response to the jury's question.

### A.     Applicable Law and Standard of Review

¶ 5     Section 18-1-408(8), C.R.S. 2024, provides that without the prosecution's consent, "no jury shall be instructed to return a guilty

2

verdict on a lesser offense if any juror remains convinced by the facts and law that the defendant is guilty of a greater offense submitted for the jury's consideration, the retrial of which would be barred by conviction of the lesser offense."

¶ 6    When responding to a jury question about a defendant's degree of guilt, the trial court may properly instruct the jury that "[i]f any juror remains convinced by the facts and law that the defendant is guilty of a greater offense," it should continue to deliberate if there is a likelihood of progress toward a unanimous verdict on any charge. *People v. Richardson*, 184 P.3d 755, 762 (Colo. 2008).

¶ 7    Whether to provide the jury with additional written instructions properly stating the law is a matter committed to the trial court's sound discretion. *People v. Alvarado*, 284 P.3d 99, 101 (Colo. App. 2011).

## B.    Additional Facts

¶ 8    Before the jury began deliberating, the trial court instructed it on first degree murder and the lesser included offenses of second degree murder and reckless manslaughter.

¶ 9     On the second day of its deliberations, the jury sent the following question to the court:

> If we are unanimous that the prosecution has proved beyond a reasonable doubt the defendant is guilty of one of the offenses and we are not unanimous and unlikely to be unanimous regarding a greater offense, are we required to return a guilty verdict for the offense on which we are unanimous?

¶ 10    The court told the parties, "[t]his is an 18-1-408(8) question issue" and then asked for their positions on how it should instruct the jury.  The prosecution said it did not consent to the court instructing the jury to render a verdict on the lesser offense to which it had agreed and suggested that the court instruct the jurors to continue deliberating on any of the charges that they were considering until they were unanimous.  Baldwin objected to any answer that "more or less [would] likely . . . implicate what influences the jury's decision."

¶ 11    The court reiterated that the issue raised came under section 18-1-408(8) and proposed to tell the jury: "If any juror remains convinced by the facts and law that the defendant is guilty of a greater offense, then you may not return a verdict on a lesser-

included offense.  You should continue to deliberate if there is a likelihood of progress toward a unanimous verdict."

¶ 12    The prosecution agreed to the court's proposal.  Baldwin, however, objected to including the language telling the jury that it "may not return a verdict on a lesser-included offense" because he believed it would "appear to maybe insinuate to return a verdict of a higher" offense.  The court disagreed with Baldwin because the language informing the jury that it could not return a verdict on a lesser included offense was required by section 18-1-408(8).  The court then instructed the jury as it had previously proposed.

¶ 13    Later that day, the jury returned a verdict finding Baldwin guilty of second degree murder.

### C.    Preservation

¶ 14    The People assert that we should decline to address Baldwin's contention because he either waived or invited any error related to the trial court's handling of the jury's question.  We disagree.

¶ 15    Both of those doctrines preclude review of an alleged error based on an affirmative act of the party raising the issue on appeal.  *See Phillips v. People*, 2019 CO 72, ¶ 16 (waiver requires an "intentional relinquishment of a known right or privilege."); *People v.*

*Zapata*, 779 P.2d 1307, 1309 (Colo. 1989) (the doctrine of invited error applies when a party has invited or injected the error into the case).

¶ 16    Under the circumstances here, we are not persuaded that Baldwin intentionally relinquished a known right or injected the alleged error into the case by raising only a limited objection to the court's proposed response.  Thus, we decline to apply either waiver or invited error to Baldwin's appellate claim.

### D.    Analysis

¶ 17    The jury's question in this case referred to a disagreement about the degree of Baldwin's guilt.  As the *Richardson* court noted, "section 18-1-408(8) expressly prohibits the trial court from alleviating jury deadlock over the degree of guilt by instructing the jury, without the prosecution's consent, to return a guilty verdict on a lesser-included offense" if any juror remains convinced that the defendant is guilty of a greater offense.  *Id.* at 761.

¶ 18    Consistent with section 18-1-408(8) and the supreme court's guidance in *Richardson*, the trial court properly instructed the jury to continue deliberating if there was a likelihood of progress toward a unanimous verdict.  *See id.* at 761-62.

¶ 19    We reject Baldwin's argument that the trial court erred because it did not ask the jury whether it was deadlocked before responding to the jury's question.  The supreme court in *Richardson* approved of the trial court giving essentially the same instruction as was given here without requiring the court to first inquire about whether the jury was deadlocked.  Thus, we perceive no error in the court's providing the instruction without first inquiring about whether the jury was deadlocked.

¶ 20    Finally, the court's response did not require the jury to reach a verdict, nor did it suggest any juror should compromise their honestly held beliefs.  Consistent with section 18-1-408(8), the court merely informed the jury that it could not return a guilty verdict on a lesser included offense if any juror was convinced that the defendant was guilty of a greater offense and that the jury "should continue to deliberate if there is a likelihood of progress toward a unanimous verdict."[1]

---

[1] We would also note that it is not clear from the record that Baldwin was prejudiced at all by the jury reaching its verdict after the court's supplemental instruction.  This is because nothing in the jury's question — or any other part of the record — reveals which of the offenses it had agreed on.  Rather, the jury told the

III.   No Error in Denying Baldwin's Suppression Motion

¶ 21    Baldwin contends that the trial court erred by denying his motion to suppress evidence obtained and statements he made during his detention and arrest.  Specifically, he argues that the police did not have a reasonable suspicion to detain him or probable cause to arrest him, and therefore, the stop and arrest violated his fourth amendment right to be free from unlawful searches and seizures.  We disagree.

A.    Standard of Review and Applicable Law

¶ 22    A trial court's suppression order presents mixed questions of fact and law.  *People v. Chavez-Barragan,* 2016 CO 66, ¶ 18.  We accept the court's findings of historic fact if competent evidence supports those findings, but we assess the legal significance of those facts de novo.  *People v. Dacus,* 2024 CO 51, ¶ 23; *see also People v. Glick,* 250 P.3d 578, 582 (Colo. 2011) ("We will not

court that it was unanimous as to Baldwin's guilt on *a lesser offense* but was not unanimous on his guilt regarding *a greater offense.*  So it is just as likely that the jury had already agreed on second degree murder and could not reach a unanimous agreement on first degree murder, as the scenario that Baldwin posits on appeal.  In any event, because we conclude that the court did not err in giving the instruction it gave, we do not need to consider the issue of prejudice.

8

substitute our own judgment for that of the trial court unless the trial court's findings are clearly erroneous or not supported by the record."). In conducting that review, we look solely to the suppression hearing record. *Dacus*, ¶ 24.

¶ 23 The Fourth Amendment of the United States Constitution and Article II, section 7 of the Colorado Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. 2, § 7; *see also People v. Brown*, 217 P.3d 1252, 1255-56 (Colo. 2009). Investigatory stops and arrests are seizures that implicate Fourth Amendment protections. *People v. Martinez*, 200 P.3d 1053, 1057 (Colo. 2009). Investigatory stops require a reasonable articulable suspicion to believe that the detainee is committing, has committed, or is about to commit a crime; but an arrest must be supported by probable cause to believe that the defendant committed, is committing, or is about to commit a crime. *Dacus*, ¶ 26; *People v. Fields*, 2018 CO 2, ¶ 12.

¶ 24 Probable cause to arrest exists when the facts and circumstances known to the arresting officer at the time of the arrest are sufficient to warrant the belief by a reasonable and prudent person, in light of that person's training and experience,

that an offense has been committed and the arrestee committed it. *People v. Thompson*, 793 P.2d 1173, 1175 (Colo. 1990). Evidence seized as the result of a warrantless arrest is only admissible at trial if probable cause supported the arrest. *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo. 2011).

¶ 25 Whether an officer has probable cause to arrest a suspect is a legal question evaluated by considering the totality of the circumstances at the time of the arrest. *Id.* at 1122. Under the fellow officer rule, the information "that the police possess as a whole" may be imputed to an individual officer. *Grassi v. People*, 2014 CO 12, ¶ 13. There are two conditions that must be met for the fellow officer rule to apply: (1) the officer must be acting pursuant to a coordinated investigation; and (2) at the time of the detention or arrest, the police as a whole must possess sufficient information to establish probable cause. *Id.* at ¶ 21.

## B. Analysis

¶ 26 Baldwin contends that the arresting officer did not have one concrete description of the suspect from any witness, and thus, did not have either a reasonable suspicion to stop him or probable cause to arrest him. We disagree.

¶ 27    Given that Baldwin's stop and arrest occurred nearly simultaneously, and because probable cause is a more demanding standard than reasonable suspicion, we focus our attention on whether the arresting officer had probable cause to arrest Baldwin.

¶ 28    At the suppression hearing, the plain-clothed detective who initially saw Baldwin in the vicinity of the shooting testified as follows:

- He learned from police dispatch that there had been a shooting in the city park a few blocks from where he was and based on the HALO video, the suspect was "a male wearing a red sweatshirt with a white hood, blue jeans, black shoes, and a black beanie."

- Less than five minutes after hearing that description, he spotted Baldwin a few blocks away from the park and noticed that he fit the suspect's description.

- He then noticed that Baldwin was (1) "very hyper vigilant and was looking around in all directions as if performing some sort of counter-surveillance"; and (2) clutching "what looked like a large, heavy object in his waistband

11

concealed beneath his clothing, and he kind of slowly walked and favored that right side."

- In his twelve years of police experience, other people he had encountered displaying those characteristics were later found to be armed with a handgun.

- He continued to follow Baldwin as Baldwin weaved up and down streets and alleys and jumped over fences, and he radioed his observations and Baldwin's movements to the other officers in the area.

- Because he was in an unmarked car and not wearing a uniform, he did not contact Baldwin out of concern that a shoot-out might ensue and officers coming onto the scene would not know he was a police officer.

- He saw Baldwin take the sweatshirt off and throw it down, and, less than a minute later, a uniformed police officer contacted Baldwin and took him into custody.

- He saw a gun removed from the discarded sweatshirt when it was recovered.

¶ 29    The officer who initiated Baldwin's detention and placed him in custody testified that:

- He was on patrol in the area of the shooting when he heard dispatch describe the suspect as a Hispanic or black male in his twenties, running southbound, and wearing a red sweatshirt, jeans, and black shoes.

- He heard the detective's statements relayed over the radio concerning Baldwin's location and his movements.

- When he spotted Baldwin walking, he announced that he was a police officer and told Baldwin to stop. Baldwin, however, began running and removed and discarded his sweatshirt while running.

- Through police communications, he eventually located Baldwin in a stairwell on the outside of a house, placed him in handcuffs, and put him in a police squad car.

¶ 30     The trial court found that the information available to the police as a whole was enough to provide them with a reasonable suspicion to stop Baldwin and probable cause to arrest him. We perceive no error in the court's decision.

¶ 31     The evidence provided at the suppression hearing through the detective's and officer's testimony established that when Baldwin was apprehended and arrested, the police knew: (1) Baldwin

13

matched the shooter's description and was seen wearing the same clothing as the shooter in the HALO video; (2) Baldwin was seen going up and down the streets and alleys and jumping fences in the area of the shooting while the police were attempting to locate him; (3) while walking, Baldwin was holding something to his side in a manner that suggested he had a weapon; (4) Baldwin removed and discarded the red hoodie prior to being apprehended; (5) Baldwin refused to stop when the officer told him to and ran away instead; and (6) a gun was found in the red hoodie Baldwin discarded. Based on that evidence, we conclude that the information known to the police as a whole and imputed to the detaining police officer under the fellow officer rule was sufficient to establish probable cause for Baldwin's arrest because it supported a reasonable belief that Baldwin had committed the shooting in the park. *See Thompson*, 793 P.2d at 1175.

IV.   Constitutionality of Crim. P. 5

¶ 32   Finally, Baldwin asserts that Crim. P. 5 is unconstitutional, both on its face and as applied to him. Specifically, he argues that (1) the rule does not establish a timeline for requiring a judicial determination of probable cause consistent with federal law; and

(2) he was detained for "a number of days before a documented judicial determination of probable cause, in what was a warrantless arrest case, took place."

¶ 33    Initially, we note that Baldwin did not raise this constitutional challenge to Crim. P. 5 in the district court. Therefore, we decline to address his as-applied challenge. *See People v. Mountjoy*, 2016 COA 86, ¶ 36 (noting that appellate courts typically decline to address unpreserved as-applied constitutional challenges); *see also People v. Thompson*, 2017 COA 56, ¶ 199 (declining to consider unpreserved as-applied challenges because factual record not developed in the district court).

¶ 34    As for his claim that Crim. P. 5 is unconstitutional on its face, Baldwin baldly asserts that the rule is unconstitutional because it fails to establish timelines for requiring probable cause determinations consistent with federal law. Baldwin, however, does not develop his "on-its-face" argument or even identify the particular constitutional provision he claims the rule violates. Therefore, we reject this claim because it is bare and conclusory. *See People v. Lientz*, 2012 COA 118, ¶ 30 (rejecting a conclusory claim because parties must present reasoned analysis for their

15

appellate assertions and not rely on conclusory allegations); *see also People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) (declining to address a bald legal proposition presented without argument or development).

## V.    Disposition

¶ 35    We affirm the judgment of conviction.

JUDGE WELLING and JUDGE BROWN concur.