No. 20402.

JOHN DORAN RUSSELL *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(395 P.2d 16)

Decided August 31, 1964.

Mr. ANTHONY J. FARIA, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mrs. AUREL M. KELLY, Special Assistant, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE MCWILLIAMS.

BY direct information Russell was charged in a first count with making an assault upon one Halligan with a deadly weapon with an intent to kill and murder. In a separate count in the same information Russell was also charged with so-called aggravated robbery, it being alleged therein that he forcibly stole, took and carried away a rifle, pistol, shotgun and currency from the person of one Mary Sarchet. To these charges Russell pled "not guilty" and "not guilty by reason of insanity." In connection with the plea of not guilty by reason of insanity, the trial court pursuant to statute committed Russell to the Colorado State Hospital, there to be observed and examined. After such examination one Dr. Karcher, a staff doctor at the Hospital, advised the committing court that in his opinion Russell was legally sane.

Thereafter, on motion by Russell, the trial court appointed a private physician, one Dr. Delehanty, to further examine Russell. Such was done, and Dr. Delehanty also advised the trial court that in his opinion Russell was legally sane.

When the matter came on for trial, Russell — through his counsel — withdrew the plea of "not guilty by reason of insanity" and elected to proceed to trial on the issues as made by the information, with its several counts, and his general plea of not guilty. The jury by appropriate verdicts adjudged Russell guilty of assault with a deadly weapon with intent to commit bodily injury, though not

guilty of assault with intent to kill and murder, and also found him guilty of simple robbery, though not guilty of aggravated robbery. Russell's motion for new trial was denied and he was sentenced to an indeterminate term in the State Reformatory. By the present writ of error Russell seeks reversal of this judgment and sentence.

The facts which formed the basis for this prosecution border on the bizarre and in view of the several assignments of error merit some mention, although it is deemed unnecessary to relate the same in depth. Russell, age 15, lived with his parents next door to the home of Mary Sarchet. On October 12, 1961, at about 9 o'clock in the morning Russell knocked on Mary's front door and when she opened the door Russell first asked permission to use the phone. Then, according to Mary, Russell pulled out a pistol and told her "to do just as I was told and I wouldn't get hurt." She further testified that Russell next demanded that she turn over to him a rifle, a shotgun and a pistol belonging to her husband. This she did. Later Russell ordered Mary and one Mabel McBeth, who had been called to the scene by Mary, to drive him out into the surrounding country. This they did and at a place selected by Russell he was let out of the car and the two women were permitted to return to their homes, with the admonition from Russell that "you are not to tell anybody."

Mary and Mrs. McBeth did "tell" the sheriff's office and soon the authorities were searching the general area where Russell had been let out of the car. After dark Russell was finally located by one Hallagin, a deputy sheriff. Hallagin testified that he was holding a lantern in his left hand at arm's length and that when he "hollered" at Russell the latter shot him in the left wrist. About this time the mother of the defendant appeared at the scene, and she quickly managed to induce Russell to give himself up to the authorities without further violence.

Russell testified that he had merely "borrowed" the guns from Mary with the intention of using them for hunting purposes. In connection with his shooting of Hallagin, Russell explained that he merely wanted to "shoot out the light," and did not intend to hit the officer.

Dr. Delehanty was called as a witness by Russell and he testified that though in his opinion Russell was legally sane, nevertheless due to an endocrine disorder Russell was a 15-year-old boy with an emotional age of 10 years. He elaborated in some detail as to the results of his examination.

 Russell's primary assignment of error is that the trial court erred in its handling of the testimony of Dr. Delehanty, as well as the testimony from certain other witnesses, all of which pertained to the mental condition of Russell. The trial court permitted this testimony, but limited it to the determination by the jury as to whether Russell could form a specific intent. It is Russell's contention that the jury should have been permitted to consider such testimony for all purposes. More specifically, Russell argues that even though he withdrew the plea of not guilty by reason of insanity, he was still entitled to introduce evidence of his mental condition for the purpose of securing an outright acquittal on the ground that he was unable to form even a *general* intent to commit a crime. We find no merit in this contention.

C.R.S. '53, 39-8-1 (1960 Perm. Supp.) provides, in part, that "[a] defendant who does not thus plead not guilty by reason of insanity shall not be permitted to rely on insanity as a defense to an accusation of crime; provided, however, that evidence of mental condition may be offered in a proper case as bearing upon the capacity of the accused to form the specific intent essential to constitute a crime." This statutory pronouncement is in accord with several prior judicial pronouncements from this Court. See *Ingles v. People,* 92 Colo. 518, 22

P.2d 1109; *Battalino v. People,* 118 Colo. 587, 199 P.2d 897 and *Berger v. People,* 122 Colo. 367, 224 P.2d 228.

██ Our examination of the record convinces us that the trial court properly spelled out and delineated the limited purpose for which the testimony pertaining to Russell's mental condition could be received and considered by the jury under the aforementioned statute. Russell withdrew his plea of not guilty by reason of insanity and having done so, he may not thereafter seek an acquittal on the ground that he was incapable of forming the general intent to commit a crime.

 Russell also contends that it was error to instruct the jury on the crime of assault with a deadly weapon as defined in C.R.S. '53, 40-2-34, his position being that he was never charged with that particular crime. This contention is also without merit. Count number one is no doubt duplicitous in that it charges assault with intent to kill or murder *and* assault with a deadly weapon in one and the same count. However, a duplicitous count in a criminal information is only a matter of form, and exceptions which go merely to form must be made before trial. Rule 12(b) Colo. R. Crim. P. In the instant case Russell made no objection to the form of count one and said count most assuredly does charge Russell, *inter alia,* with assault with a deadly weapon.

In this connection, count number one in the instant information is couched in the same language as the information considered by us in *Day v. People,* 152 Colo. 152, 381 P.2d 10. In that case, as here, it was argued that the defendant was only charged with assault with intent to murder, and was not charged with assault with a deadly weapon with an intent to commit bodily injury. In rejecting that argument, it was stated:

"With reference to the claim of defendant that the court erred in submitting an instruction defining the crime of 'assault with a deadly weapon,' *it is sufficient*

*to say that the information charges that offense, and assault to kill in one count.* No objection was made thereto on the ground of duplicity. There was evidence admitted at the trial which made it necessary to give this instruction . . ." (Emphasis supplied.)

The remaining assignments of error have been carefully considered and found to be without merit. No good purpose would be served by the detailing thereof, and hence the judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.