Darrell ROELKER, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 89SC274.

Supreme Court of Colorado,
En Banc.

Jan. 28, 1991.

Rehearing Denied Feb. 19, 1991.

David F. Vela, State Public Defender, Judy Fried, Deputy State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol.Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *People v. Roelker*, 780 P.2d 17 (Colo.App.1989). We affirm.

Darrell Roelker was charged in an information with aggravated incest. Section 18–6–302, 8B C.R.S. (1987). He was found guilty by a jury and sentenced to four years in the department of corrections. Two errors are asserted as grounds for reversal. Roelker asserts that the trial court failed to comply with *People v. Curtis*, 681 P.2d 504 (Colo.1984), by permitting defense counsel to waive Roelker's constitutional right to testify and without determining whether Roelker desired to waive his right to testify. The second issue is whether the prosecution made a sufficient election of the sexual act relied upon for conviction to comply with *People v. Estorga*, 200 Colo. 78, 612 P.2d 520 (1980).

I

While the family was vacationing in late July 1986, L.R., a four-year old, complained to her mother about pain and discomfort in and around her vagina. The mother examined L.R. and found redness around the vagina. When asked about the redness, L.R. said that her father and brother had been mean to her. L.R.'s mother reported the complaints to the Department of Social Services and an investigation was made. When L.R. was interviewed, she told the social service worker that her father and her seven-year-old brother had abused her. She said that her father had stuck his private in her face and against her vagina, and had done other acts that she described as playing nasty. She said that the acts occurred sometime between "when it got hot" and when the family was on vacation.

Prior to trial, defense counsel made a motion to compel the prosecution to individ-

ualize and select specific acts. The information charged the offense in the words of the statute and failed to specify a particular date. The defense motion was granted and the prosecution was limited to proof of facts in the summer months of 1986 prior to the vacation, but was not required to elect a particular act to support the charge. During the course of trial, the time frame was further limited to the month prior to the family vacation.[1] The defense did not object during the trial to the prosecution's failure to specify the act upon which it relied for conviction.

During the prosecution's case in chief, Roelker was advised of his constitutional right to testify. Then, at a bench conference after the prosecution rested, which is not part of the record, counsel for Roelker advised the court that Roelker had waived his right to testify and the defense would rest without presenting evidence. The jury was then excused and the court repeated what was said at the bench conference. The trial judge stated that "the record should reflect that [defense counsel] advised the court at a bench conference after the People had rested that he and the defendant elected not to present any testimony." No objection was made by Roelker to the court's statement.

The court of appeals determined that the trial court had substantially complied with *People v. Curtis*, and that the prosecution had sufficiently narrowed the time frame when the alleged sexual assault occurred to permit Roelker to prepare a defense. We agree.

## II

 *People v. Curtis* requires that the trial judge ensure the defendant's waiver of his right to testify is intelligently and competently made. 681 P.2d at 514. In order for a defendant to make a voluntary, knowing, and intelligent decision, he must be aware of his right to testify, the consequences of testifying, and his right to take the stand regardless of his counsel's advice to the contrary. *Id.* In order for a trial court to ensure that a right to testify is voluntarily, knowingly, and intentionally waived, *Curtis* requires that the trial court advise the defendant outside the presence of the jury

> that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.

*People v. Curtis*, 681 P.2d at 514.

 Under *Curtis*, the trial judge has the responsibility to determine on the record whether the accused has effectively waived his right to testify. *Id.* at 515. The issue in this case is whether *Curtis* requires the trial judge to ask the defendant personally, on the record, whether he wishes to waive his right, or whether it is sufficient for the trial judge to advise the defendant of his right to testify and of the possible consequences of doing so.

 The actual holding of *Curtis* limits the trial judge's responsibility to advising the defendant of his right to testify and the consequences of doing so. *Curtis* contains dictum supporting an argument that either defense counsel or the trial judge should question the defendant on the record in order to "determine the defendant's wishes." *Id. Curtis* suggests that, "the best means of demonstrating the defendant's state of mind are his own declarations on the record." *Id.* (citing *State v. Noble*, 109 Ariz. 539, 541, 514 P.2d 460, 462

---

1. The physician called by the prosecution testified that, based on the degree of redness of L.R.'s vaginal area, sexual contact could not have occurred more than a month prior to his examination on July 22, 1986.

(1973)).[2] However, *Curtis* did not decide what the minimum requirements are to establish a waiver of a defendant's right to testify in his own defense. We reject Roelker's argument that the dictum of *Curtis* mandates a rigid requirement that the trial court question the defendant to determine whether his waiver is truly voluntary.

■ *Curtis* stated, in part, that "where a trial court, applying the correct standards, makes the findings necessary to establish effective waiver, and there is evidence to support these findings, they will not be disturbed on review." 681 P.2d at 515. A lower court's determination that a defendant effectively waived his right to testify will therefore be upheld if it is supported by competent evidence. *Id.* at 516.[3]

■ In this case, competent evidence exists to support the trial court's determination that Roelker understood his right to testify and voluntarily waived that right. During the course of trial, the court properly advised the defendant under *Curtis*.[4] When asked if he understood his right to testify and the consequences of invoking that right, Roelker responded, "Yes, I do."

During a bench conference after the prosecution rested, defense counsel advised the trial judge that he and Roelker had decided not to present any testimony. The court then stated, in the presence of Roelker, that the record should reflect that Roelker and his counsel had elected not to present any testimony. Roelker made no objection, and gave no indication that his attorney had not represented his wishes at the bench conference. Similarly, Roelker did not make any objection when his attorney said, on the record, that the defense was not going to present any evidence and would rest.

There is no indication that Roelker did not fully understand his right to testify, or that his decision not to testify was involuntary or was usurped by his lawyer. Based on the record, we conclude that the trial court's determination that Roelker effectively waived his right to testify was supported by competent evidence in the record.

### III

■ Roelker also argues that the prosecution failed to specify the act upon which a conviction was sought and thereby violated *People v. Estorga*, 200 Colo. at 81, 612 P.2d at 523. No objection was made to that failure, so we must determine whether

2. In *Noble*, although the Arizona Supreme Court believed that the best means of demonstrating the defendant's intent was through his own words, the court held that a requirement that the defendant merely be present during a hearing determining the voluntariness of his waiver was sufficient to assure the voluntariness of that waiver. *State v. Noble*, 109 Ariz. at 541, 514 P.2d at 462. The Arizona court held, that although it was error to exclude the defendant from the hearing determining the voluntariness of his waiver, it was harmless error because there "was no evidence of a continuous disagreement between the defendant and his attorneys on this matter." *Id.* at 541, 514 P.2d at 462.

3. In the companion case to *Curtis, People v. Jones,* the defendant claimed, in a post conviction hearing, that he had wished to testify but that his counsel had prevented him from doing so. *People v. Curtis*, 681 P.2d at 509. Jones was advised of his right to testify by his counsel, however the trial judge never advised Jones of his right to testify, nor did he inquire whether Jones' waiver of that right was voluntary and

knowing. *Id.* at 509. Nevertheless, we held that there was "sufficient evidence in the record to establish that neither the lawyers nor the judge acted in any way inconsistent with Jones' right to testify." *Id.* at 516. We therefore concluded that the trial court's determination that Jones effectively waived his right to testify was supported by competent evidence. *Id.*

4. The trial court provided a proper *Curtis* advisement when it explained to Roelker on the record:

> It is my duty to advise you at this time of your right to testify.
> You are protected by a constitutional provision against self incrimination, which means you do not have to testify if you do not wish to. If you elect not to testify, and you want, I will advise the jury that they cannot use your failure to testify as any evidence of guilt, and they should not consider it in any respect.
> However, if you elect personally that you prefer to testify, you have the right to do so, even if your attorney advises you against it. This is a personal right that you have, do you understand that?

there was plain error.[5]

Prior to trial, the prosecution must either provide the defendant with a bill of particulars or answer a motion to elect or individualize and select the specific act upon which conviction is sought. *Kogan v. People*, 756 P.2d 945 (Colo.1988). The prosecution is not required to specify the precise date when the alleged act occurred unless that date is a material element of the offense. *Id.* at 953. If, however, there is a reasonable likelihood that the jurors may disagree on the acts the defendant committed, either the prosecution must elect specific acts or the jury must be given a modified unanimity instruction. *Thomas v. People*, 803 P.2d 144 (Colo.1990). The jury must be instructed that in order to convict the defendant, "they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged." *Thomas*, at 154. The election of an act at trial, or the alternative unanimity instruction, is necessary to assure that "some jurors do not convict on one offense and others on a separate offense." *People v. Estorga*, 200 Colo. at 81, 612 P.2d at 523; *see also Thomas*, at 154.

The trial court committed error by not requiring the prosecution to elect a specific act upon which to rely for conviction, or in the alternative, by providing a *Thomas* unanimity instruction. However, because the evidence of sexual abuse was restricted to a narrow time frame and was limited to events surrounding a single transaction, that error is harmless.

Prior to trial, the court restricted the testimony to incidents allegedly occurring during the time period between May and September of 1986. At trial, the prosecution further limited the time period to incidents occurring one month prior to the physical examination of L.R. on July 22, 1986.

Although the testimony on the sexual abuse of L.R. was fragmented, it essentially concerned a single transaction. Hearsay witnesses testified that L.R. claimed her father had played nasty with her, put his private in her face, manually stimulated himself, and that he had touched her privates. Detective Walt Parsons of the Arvada Police Department then testified that in a response to a question of what playing house meant, L.R. placed two anatomically correct dolls together, placed one of the male doll's hands on his penis, and placed the other hand on the female doll's vagina. L.R. then made an up and down motion with the hands of the male doll.[6]

Taken as a whole, the evidence presented at trial focuses on the single transaction of Roelker manually stimulating himself and simultaneously probing L.R.'s vagina. The evidence presented no basis for a juror to conclude that this type of sexual conduct occurred on some occasions referred to by L.R. but not on others. Because the evidence presented related to a particular transaction, occurring within a one month time frame, the reliability of the conviction is not in doubt.

Accordingly, because the trial court complied with *Curtis*, and since the failure to comply with *Thomas* was harmless, we affirm the court of appeals.

LOHR, J., dissents and QUINN, J., joins in the dissent.

Justice LOHR dissenting:

The majority holds that the record adequately establishes that the defendant, Darrell Roelker, waived his constitutional right to testify. I disagree and therefore respectfully dissent.

---

**5.** Plain error is found only when, after review of the entire record, the reviewing court "can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People*, 743 P.2d 415, 420 (Colo.1987).

**6.** Sherrin Ashcraft of the Jefferson County Department of Social Services testified that in response to a question of what playing house meant, L.R. stated that dad would play nasty with his private and would also play nasty with her private area. When asked how dad played nasty, L.R. picked up the adult male doll and stroked the hands of the doll back and forth on the penis. When asked how dad played nasty with her, L.R. placed the male doll's hand in the vagina area of the female doll.

I.

II.

"A defendant in a criminal case has the constitutional right to testify in his own defense under the due process clauses of the United States Constitution, amend. XIV, and the Colorado Constitution, Art. II, § 25." *People v. Curtis,* 681 P.2d 504, 509–10 (Colo.1984); *see also Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972). The right to testify is fundamental and of such compelling importance that defense counsel cannot waive the right on behalf of the accused. *Curtis,* 681 P.2d at 512. A waiver is an intentional relinquishment of a known right. To be effective, a defendant's waiver of the right to testify must be voluntary, knowing and intentional. *Id.* at 514. "The courts do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver." *Id.*

The accused's "constitutional right to testify is so fundamental that procedural safeguards are necessary to ensure that the defendant understands the significance of waiver of this right." *Id. Cf. Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (requiring procedural safeguards to assure effectiveness of waiver of right to counsel). The trial judge has the responsibility to determine on the record whether the accused has effectively waived the right to testify. *Curtis,* 681 P.2d at 515; *see People v. Mozee,* 723 P.2d 117, 122 (Colo.1986). In order to discharge that responsibility the judge must assure that the defendant is aware that he has the right to testify, knows the consequences of testifying, and knows that he may take the stand notwithstanding the contrary advice of his counsel. *Curtis,* 681 P.2d at 515; *Palmer v. People,* 680 P.2d 525, 527 (Colo. 1984); *see Mozee,* 723 P.2d at 121–22.[1]

The issue in the present case is not whether the defendant was adequately advised of his right to testify but whether he effectively waived that right. At the beginning of the second and final day of trial, the court advised the defendant, out of the presence of the jury, that he had the right to testify or not to do so and that he could elect to testify even if his attorney advised against it. The court also expanded on the consequences of testifying or electing not to take the stand. The defendant does not contend that the advisement was inadequate. Thereafter, the People presented four more witnesses and rested its case.

Counsel and the court then engaged in a bench conference that was not made part of the record. After the bench conference was concluded, the court inquired on the record whether the defendant would present any evidence. Defense counsel stated, "Judge, after examining the state of the evidence as presented by the prosecution, we are not going to present any evidence; and we will rest." The jury left the courtroom and the court then stated, "All right, the record should reflect that [defense counsel] advised the Court at a bench conference after the People had rested that he and the Defendant elected not to present any testimony." The defendant remained silent throughout these proceedings.

The trial court made no determination on the record, as required by *Curtis,* concerning whether the defendant waived his right to testify. The majority acknowledges, as it must, that "[u]nder *Curtis,* the trial judge has the responsibility to determine on the record whether the accused has effectively waived his right to testify." Maj. op. at 1338. It concludes, however, that the trial court "[determined] that Roelker understood his right to testify and volun-

1. In *Jones v. People,* a case consolidated with *Curtis,* we upheld a trial court's determination after a hearing on a motion for postconviction relief that the defendant had waived his right to testify. *Curtis,* 681 P.2d at 516–17. Although at trial the court had not advised the defendant of his right to testify or determined the validity of the defendant's waiver of the right, as required by *Curtis,* we declined to apply retroactively the "rule that voluntariness of the waiver must be determined on the record." *Curtis,* 681 P.2d at 516–17.

tarily waived that right," *id.* at 1339, and "[determined] that Roelker effectively waived his right to testify," *id.* at 1339. The only part of the record from which these "determinations" could possibly be inferred is the trial court's statement, made some time after the *Curtis* advisement and without further inquiring of the defendant directly, that "the record should reflect that [defense counsel] advised the Court at a bench conference after the People had rested that he and the Defendant elected not to present any testimony." I am unable to infer from this terse statement a "determination," explicit or implicit, that the defendant voluntarily and understandingly waived his right to testify.

Even more important than failure to make a determination of waiver on the record, the record would not support a finding of waiver. The record shows only that the defendant was advised early in the day that he had the right to testify and that the ultimate decision whether to testify was his. *See, e.g., People v. Romero,* 767 P.2d 782, 785 (Colo.App.1988) ("[T]he court must first determine whether the defendant was adequately informed of his right to testify. Second, the court must determine whether the defendant knowingly, intelligently, and voluntarily waived the right."). He was never given an opportunity after the prosecution rested its case on the record to exercise or waive that right. The majority constructs a waiver from the defendant's silence in the face of the announcements by defense counsel and the court that no evidence would be presented on behalf of the defendant. This is inconsistent with the settled law that courts indulge every reasonable presumption against waiver of fundamental constitutional rights. *See Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023; *Curtis,* 681 P.2d at 514. Waiver of the fundamental right to testify, which is personal to the defendant, cannot be inferred from silence in the face of a declaration by defense counsel that the right has been waived. *Compare Palmer,* 680 P.2d at 527 (a record of silence by the defendant

when defense counsel asserts that the defendant will not testify is insufficient to demonstrate waiver under *Curtis* ) *with People v. Fonda,* 712 P.2d 1067, 1069 (Colo. App.1985) (trial court's questioning of both defense counsel and the defendant, on the record, to determine if waiver of the right to testify is knowing, voluntary and intentional satisfies *Curtis* ). This record contains no competent evidence to support a finding that the defendant voluntarily, knowingly and intentionally waived the fundamental constitutional right to testify on his own behalf.

The trial court did not discharge its responsibility to determine on the record whether the defendant effectively waived his right to testify. A finding of effective waiver could not be supported by the record. Accordingly, the judgment should be reversed and the case remanded for a new trial.

Justice QUINN joins in this dissent.