Daniel Gregory **MELINA**, Jr., Petitioner

v.

The **PEOPLE** of The State of Colorado, Respondent.

No. 05SC500.

Supreme Court of Colorado, En Banc.

June 25, 2007.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado, Forrest W. Lewis P.C., Forrest W. Lewis, Dean Neuwirth P.C., Dean Neuwirth, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Cheryl Hone Canaday, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

### Introduction

In this appeal we review the unpublished court of appeals decision, *People v. Melina*, No. 03CA0391, 2005 WL 729537 (Colo.App. Mar.31, 2005), which affirmed Defendant Gregory Melina, Jr.'s conviction for solicitation to commit first degree murder. At trial, the People argued that Melina solicited another person to kill a man whose cooperation with police led to the filing of serious criminal charges against Melina's brother. The People presented evidence that Melina spoke with several people, known and unknown, regarding the solicitation. Melina argues that his conviction must be reversed because the court did not give the jury an unanimity instruction for the solicitation charge.

Courts should give unanimity instructions where there is evidence of multiple acts, any one of which would constitute the offense charged. These instructions require jurors to agree on the specific act or series of acts on which their verdict is based. Courts need not give an unanimity instruction when a defendant is charged with crimes occurring in a single transaction.

Melina contends that the People presented two independent, discrete, and mutually exclusive theories of solicitation to the jurors: one involving Leandro Lopez, and the other involving Robert Padilla. Thus, he claims

that his conviction must be reversed because it is impossible to determine whether the jury unanimously convicted him of soliciting Lopez or of soliciting Padilla.

The court of appeals rejected Melina's argument that the court needed to provide jurors with an unanimity instruction, and agreed with the trial court's conclusion that the People charged and tried their case against Melina on the theory that he was involved in a single transaction of solicitation. For this reason, the court of appeals held that the prosecution was not required to select a single solicitee. Melina now argues that this conclusion was in error and that the trial court needed to give an unanimity instruction. We disagree.

Our review of the record supports the trial court's and the court of appeals' conclusions that the prosecution's theory and the evidence presented amounted to a single transaction of solicitation by the defendant to kill one victim. Further, we conclude that the People referenced Melina's conversations with several individuals to corroborate his intent to have someone kill Bueno, not to suggest that Melina had committed several crimes of solicitation. Thus, the trial court was not required to give an unanimity instruction. Hence, we affirm the judgment of the court of appeals.

## Facts and Procedural History

A grand jury indicted Melina with first degree murder, conspiracy to commit first degree murder, solicitation to commit first degree murder, and five additional habitual criminal counts. The trial jury found Melina guilty of solicitation but acquitted him of first degree murder and conspiracy. The court then found him to be a habitual criminal and sentenced him to ninety-six years in prison.

All charges arose from the murder of Paul Bueno, a man who had cooperated with law enforcement officials in a case against Melina's brother, Manuel. The People presented evidence at trial that Lopez and Padilla kidnapped Bueno and Padilla killed Bueno. The central question at trial concerned whether Melina was involved in the murder, and if so, what his level of involvement was. Pertinent to our decision here, the People alleged that Melina made several efforts to solicit *someone* to kill Bueno.[1]

The indictment charged Melina with solicitation of several people, "Manuel Daniel Melina, Leandro Salvatore Lopez, Jr. and persons unknown to the District Attorney," between January 1, 1999 and February 1, 2000.[2] Before voir dire started, the trial court read the solicitation indictment to the jury panel, inserting Robert Padilla's name into the indictment.

At trial, the People did not specify a specific individual as the solicitee, but stated the jurors should "convict this Defendant, Daniel Melina … for soliciting the murder of Paul Bueno." The People argued that the solicitation occurred "when this man, Daniel Melina, beg[an] actively seeking *someone* to murder Paul Bueno." (Emphasis added.) Statements of Melina's intent to have *someone* kill Bueno pervaded the trial.

The People in their opening statement told the jury that Melina, in addition to statements made to Lopez and Padilla, made similar statements to others, including witnesses Cruickshank and Mascarenas, that he wanted someone to kill Bueno:

> [Daniel Melina] begin[s] telling people, such as Rick Cruickshank [and] Vince Mascarenas, "Bueno is snitching, his days are numbered." Daniel Melina, the Defen-

1. Because the jury acquitted Melina on the other charges, only those facts and issues related to the solicitation charge are relevant to our review.

2. The indictment of this charge read:
   On or about January 1, 1999 thru February 1, 2000 in Adams County, Colorado, DANIEL GREGORY MELINA, JR., A/K/A VINCENT GARCIA, A/K/A DAN M. MEDINA, A/K/A DANIEL GREGORY MOLINA, A/K/A DAVID MANUEL, A/K/A DANIEL G. MOLINA, A/K/A DAVID GREGORY MOLINA, A/K/A DANNY G,

did unlawfully and feloniously command, induce, entreat and otherwise attempt to persuade another person, Manuel Daniel Melina, Leandro Salvatore Lopez, Jr. and persons unknown to the District Attorney, to commit the felony of Murder in the First Degree, as defined by C.R.S. § 18–3–102(1)(a), with intent to promote and facilitate the commission of that crime and under circumstances strongly corroborative of that intent.

dant in this case, tells Rick Cruickshank somebody needs to take Bueno out, whoever takes out Bueno is going to get paid.

Several witnesses testified that Melina told them that Bueno needed to be killed. Lopez testified that Melina said that he told Padilla that "this dude [Paul Bueno] needed to get it." Investigator Fuller testified that Vince Mascarenas said that Melina told him, "Paul's days are numbered." Robert Osbourne testified that Melina asked him, "You know about Paul Bueno?" and then stated, "[s]omebody should get rid of Paul Bueno." (Emphasis added.) Cruickshank testified that although Melina never directly tried to get him to kill Bueno, Melina had told him that "whoever did [kill Paul Bueno] would get paid." (Emphasis added.) The People claimed that Melina's indirect comments constituted the solicitation to have someone kill Bueno, arguing "there's no difference between me saying ... [i]f somebody kills ... Paul Bueno, it's going to be worth a lot of money. That's the same thing as saying, I want you to kill him and then I'll pay you." (Emphasis added.)

In addition to these named individuals, the People argued that the evidence showed that Melina expressed his intention to have Bueno killed to several unknown individuals. In both opening and closing arguments, the People argued that Melina was responsible for getting "the word out on the street" that he and his brother wanted Bueno to be killed. In opening, the People stated:

> [T]he Melinas decide they need to get Paul Bueno out of the picture. Manuel Melina begins getting the word out in jail. As his brother, Daniel Melina, gets the word out on the street. They want to let everybody know that Paul Bueno is a snitch and somebody needs to take this guy out.... [Manuel tells Joe Zuniga] "how his brother was going to take care of things.... Daniel Melina is out on the street getting the word out." ... The Melinas know they need to find somebody to kill Bueno and Daniel Melina is the one outside, he's the one who has the ability to do it.

(Emphasis added.) During closing the People argued similarly that Melina "begins getting the word out on the streets."

Ultimately the People focused on Melina's interaction with Lopez and Padilla, both of whom the evidence indicated were directly involved in the killing of Paul Bueno. The People argued that Melina was guilty of solicitation, conspiracy, and murder: "[Melina] solicited Padilla and Lopez to commit this murder. He conspired with them.... He is the one who set this crime in motion, he is the one calling the shots.... He is as guilty of Paul Bueno's murder as if he pulled the trigger himself."

The court instructed the jury that to find Melina guilty of criminal solicitation, it had to find that Melina attempted to persuade another person to commit first degree murder with the intent to promote the murder or under circumstances strongly corroborating this intent:

> The elements of the crime of Criminal Solicitation are 1. That the Defendant; 2. in the state of Colorado, at or about the date and place charged; 3. commanded, induced, entreated, or otherwise attempted to persuade another person; 4. to commit the crime of first degree murder, whether as a principal or accomplice; 5. with intent to promote or facilitate the commission of the crime of first degree murder; and 6. under circumstances strongly corroborative of that intent.

(Emphasis added.) Melina did not request that the People identify the specific acts or series of acts that they relied upon to prove the crime of solicitation; nor did he request that the court give the jurors an unanimity instruction.

Melina first argued that an unanimity instruction was necessary on the solicitation count in his post-trial motion for a new trial. In opposition, the People argued that they did not need to specify who was solicited. They told the trial court that this was a charging decision and they could have pled the solicitation as separate counts and alleged each as a separate crime, but they chose to charge only one count of solicitation:[3]

---

3. We do not decide whether the People could

have charged separate counts of solicitation for

I don't believe that this is the type of situation that we needed to specify who was solicited.... I don't think that we needed to identif[y] each individual that was solicited.... Had we done that, they would have been pled as separate counts and each one alleged to be a separate crime.

The trial court denied Melina's motion for a new trial based on the failure of the trial court to sua sponte give an unanimity instruction concerning the crime of solicitation, stating, "I assume at least for purposes of this hearing, that the jury found but one solicitation, although, there may be a number of individuals involved, we're talking about one act or one solicitation."

Melina appealed this issue to the court of appeals. In its unpublished opinion, that court agreed with the trial court that the "defendant was charged with a single ongoing solicitation involving known and unknown individuals over a period of thirteen months" and concluded that "[b]ecause the solicitation at issue here constituted a single transaction, the prosecution was not required to select a single solicitee." *Melina*, No. 03CA0391, slip. op. at 8, 2005 WL 729537.

To support this conclusion, the court of appeals noted that the indictment purported to allege a single ongoing solicitation, *id.*, a point that was also conceded by Melina. The court of appeals stated that "because the indictment uses the conjunction 'and,' as opposed to the disjunctive 'or,' in describing the solicitees, it charges a single ongoing solicitation of a finite group, people of known and unknown identities over a period of time." *Id.* at 3. Thus, the court of appeals affirmed Melina's conviction. *Id.* at 13.

Melina now argues before us that the trial court erroneously instructed the jury to convict Melina if it found he solicited "another person," because the prosecution tried the case as two discrete, mutually exclusive, and independent crimes of solicitation: the Lopez theory and the Padilla theory. In granting certiorari and rephrasing the certiorari question, we implicitly accepted the underlying factual premise of Melina's brief that, as a factual matter, the jury heard two discrete, mutually exclusive, and independent factual theories of solicitation.[4] The factual premise of the certiorari question—that the jury was presented with evidence of two discrete and independent theories of solicitation—mischaracterizes our view of the record. Thus, with this determination in mind we turn to the issue of whether the trial court erred in failing to instruct the jury on unanimity absent a request by the defendant.

## I.

■ Where there is evidence of multiple acts, any one of which would constitute the offense charged, the People may be compelled to elect the acts or series of acts on which they rely for a conviction. *People v. Estorga*, 200 Colo. 78, 81, 612 P.2d 520, 523 (1980). Alternatively, the defendant may be entitled to a special jury instruction requiring the jurors to agree unanimously on which act or acts occurred. *Thomas v. People*, 803 P.2d 144, 153–54 (Colo.1990).

■ When a defendant is charged with crimes occurring in a single transaction, however, the prosecution does not have to elect among the acts that constitute the crime.

each person with whom Melina was alleged to have spoken.

4. Melina presented three issues for certiorari:
1. Can a solicitation conviction stand where the prosecution tells the jury that defendant independently solicited two people but the jury instructions make it impossible to determine if the jurors unanimously convicted defendant of soliciting just one (or both) of those people?
2. Does the crime of solicitation exist in Colorado for soliciting an indefinable group of people?
3. Are there separate solicitations or just a single solicitation when a defendant makes sepa-

rate but similar communications to different people?

The Court reframed these three issues as one issue when granting certiorari. We granted certiorari on the issue: "[w]hether the unit of prosecution for the crime of solicitation permits a single conviction based on evidence that the defendant independently solicited two different people for the same crime." All of these questions imply the factual premise of the Defendant's brief that as a factual matter the jury heard two discrete, mutually exclusive, and independent factual theories of solicitation.

*People v. Collins,* 730 P.2d 293, 301 (Colo. 1986); *People v. Scialabba,* 55 P.3d 207, 211–12 (Colo.App.2002). Additionally, an unanimity instruction need not be given. *People v. Jacobs,* 91 P.3d 438, 443 (Colo.App.2003). For this reason, we need not determine the unit of prosecution for solicitation if this case involves a single transaction of solicitation because there would have been no instructional error. The central question then for us to consider is whether the facts of this case involve a single transaction of solicitation.

■ Several communications may constitute a single transaction of solicitation. In *Jacobs,* the court of appeals held that even though the record contained evidence of at least thirty e-mails between the defendant and the detective in a child solicitation case, these communications constituted a single transaction—arranging one date. *Id.* Further, it is not necessary that the act of solicitation be a personal communication to a particular individual. "[A]n information charging one with soliciting from a public platform a number of persons to commit the crimes … is sufficient." 2 Wayne R. La-Fave, *Substantive Criminal Law* § 11.1(c), at 198 (2d ed.2003) (citing *State v. Schleifer,* 99 Conn. 432, 121 A. 805 (1923)).

■ Criminal solicitation requires proof beyond the mere verbal act of soliciting another to commit a crime. *People v. Aalbu,* 696 P.2d 796, 805 (Colo.1985); *People v. Hood,* 878 P.2d 89, 94 (Colo.App.1994). Section 18–2–301(1), C.R.S. (2006), provides that a person is guilty of solicitation if (1) he attempts to persuade another person to commit a felony, (2) with the intent to promote the commission of the crime, and (3) under circumstances strongly corroborative of that intent:

> A person is guilty of criminal solicitation if he or she commands, induces, entreats, or otherwise attempts to persuade another person, or offers his or her services or another's services to a third person, to commit a felony, whether as principal or accomplice, with intent to promote or facilitate the commission of that crime, and under circumstances strongly corroborative of that intent.

To prove solicitation, the prosecution must present evidence of the circumstances surrounding the solicitation "strongly corroborative" of a defendant's specific intent to promote or facilitate the commission of the crime solicited. *Id.; People v. Latsis,* 195 Colo. 411, 413–14, 578 P.2d 1055, 1057–58 (1978); *Hood,* 878 P.2d at 94. This requirement helps alleviate the fear that false charges of solicitation may be brought against a defendant either out of misunderstanding or for purposes of harassment. La-Fave, *supra,* § 11.1(b), at 193 (noting that such a risk is greater with solicitation than with other inchoate crimes because solicitation may be committed merely by speaking).

■ Corroborative circumstances of a defendant's intent to facilitate the commission of a crime may span a long period of time. *Aalbu,* 696 P.2d at 805; *Hood,* 878 P.2d at 94. These circumstances include not only the circumstances surrounding a defendant's conversations, but also evidence of a defendant's discussions with other people regarding the commission of a crime. *See Hood,* 878 P.2d at 94.

It follows that evidence of several communications may be used to corroborate a defendant's intent to facilitate the commission of a crime. Hence, conversations with multiple people regarding a solicitation may constitute a single transaction of solicitation when the prosecution presents those conversations as corroborating evidence of a defendant's intent to persuade someone to commit a felony.

## II.

■ Melina argues that the court's instruction that the jurors convict Melina if they found he solicited "another person" resulted in instructional error because the prosecution tried the case as two discrete, mutually exclusive, and independent crimes of solicitation: the Lopez theory and the Padilla theory. Melina claims that the submission of these two crimes of solicitation to the jury as one crime of solicitation created a jury unanimity problem in this case. Our record review does not support this argument.

Melina correctly notes that the evidence in this case was that Lopez and Padilla were directly involved in the killing of Bueno, with the issue being whether Melina was involved in Bueno's murder. As such, the prosecution focused its arguments on Melina's interactions with Padilla, the person whom Melina allegedly decided would be the "right person" to kill Bueno. However, the fact that the People focused on Lopez and Padilla does not mean they were limiting the evidence of the solicitation charge to these two people. Instead, the record reveals the People focused on Lopez and Padilla to support the other charges they were prosecuting—conspiracy and first degree murder.

Melina highlights isolated statements to claim that the People proceeded under two theories, the Lopez theory and the Padilla theory. However, Melina's claim of discrete, mutually exclusive, and independent theories of solicitation rings hollow and appears out of context when all of the People's witnesses and evidentiary arguments are considered. The People's theory of solicitation and the evidence presented establish that Melina engaged in a single transaction of solicitation to have *someone* kill Bueno.

The indictment initially charged Melina with a single, ongoing solicitation of several people. The People then named at least four individuals—Lopez, Padilla, Cruickshank, and Mascarenas—with whom Melina spoke regarding his intent to have Bueno killed. The People also argued that Melina contacted unknown individuals, "spreading the word on the street" because he wanted somebody to kill Bueno.

The fact that Melina made numerous statements to several individuals regarding his desire to have Bueno killed does not undermine the trial court's and court of appeals' conclusions that these statements, when tak-

en together, constitute a single transaction of solicitation. *See Jacobs,* 91 P.3d at 443. In the context of this case, the People's statements identifying the specific individuals with whom Melina spoke regarding his intent to have Bueno killed serve as corroborating evidence of his intent, not evidence of multiple acts of solicitation. *See Aalbu,* 696 P.2d at 804–05; *Hood,* 878 P.2d at 94. This conclusion is supported by the fact that the People charged and tried this case as one transaction of solicitation.

■ Notably, even if Melina's conversations with various people could be charged as separate crimes of solicitation, these crimes would not be severable in this case because the People charged and tried the case under the broad theory that Melina engaged in a single transaction of solicitation.[5] Retrial for specific acts of solicitation in this case would violate the Double Jeopardy Clause. *See* Colo. Const. art. II, § 18; *People v. Berreth,* 13 P.3d 1214, 1216 (Colo.2000). The Double Jeopardy Clause's "same offense" prohibition bars a subsequent prosecution for the same statutory offense if it requires proof of the same facts upon which the first prosecution was based. *People v. Williams,* 651 P.2d 899, 903 (Colo.1982). Section 18–1–301(1), C.R.S. (2006) codifies the prohibition by barring a second trial for the same offense based on the same facts as an initial prosecution when the former prosecution resulted in circumstances such as an acquittal, termination by a final order or judgment, or resulted in a conviction.[6]

We agree with the trial court and court of appeals that the prosecution did not present two discrete, mutually exclusive, and independent crimes of solicitation but instead that the evidence presented and the People's theory of the case was that Melina engaged in a single transaction of solicitation for the

---

5. We do not decide the certiorari issue as to what constitutes the unit of prosecution for solicitation.

6. C.R.S. section 18–1–301 provides:
   **Second trial barred by former prosecution for same offense.** (1) If a prosecution is for a violation of the same provision of law and is based upon the same facts as a former prosecution, it is barred by the former prosecution under the following circumstances: (a) The

former prosecution resulted in an acquittal .... (b) The former prosecution was terminated by a final order or judgment for the defendant that has not been set aside, reversed, or vacated, and that necessarily required a determination inconsistent with a fact or a legal proposition that must be established for conviction of the offense (c) The former prosecution resulted in a conviction....

murder of Paul Bueno. Hence, the trial court did not need to give jurors an unanimity instruction.

### Conclusion

Our review of the record supports the trial court's and court of appeals' conclusions that the prosecution's theory and the evidence presented amounted to a single transaction of solicitation by the defendant to kill one victim. We conclude that the People referenced Melina's conversations with several individuals to corroborate his intent to have someone kill Bueno, not to suggest that Melina had committed several crimes of solicitation. Thus, the trial court was not required to give an unanimity instruction. Hence, we affirm the judgment of the court of appeals.

Justice COATS concurs in the judgment only, and Justice RICE joins in the concurrence.

Justice EID does not participate.

Justice COATS, concurring in the judgment only.

I do not join the majority opinion, both because I believe it presumes a general right to jury agreement that does not exist in either the federal or state constitution and because I believe its interjection of the concept of a "transaction of solicitation," apparently in contrast to a single crime of solicitation, hopelessly confuses the scope of the crime itself, as well as the law of this jurisdiction governing a defendant's right to compel an election among separate criminal acts sufficient in themselves to satisfy a single charge or count. Because I also believe, however, that a defendant waives any right he may have to an election by failing to assert it in a timely manner, and therefore that a trial court's failure to force such an election, sua sponte, cannot amount to error at all, much less plain error, I nevertheless concur in the majority's ultimate decision to affirm the defendant's conviction.

### I.

I find it difficult to unravel the majority's rationale because it appears to me to conflate so many different concepts. I consider it clear, however, that the acts evidenced at trial do not constitute a single offense of solicitation, as that crime is defined in this jurisdiction; that a defendant is no less entitled to an election of acts charged in a single count merely because they arise from the same criminal episode; and that the numerous acts of solicitation included within the terms of the lone solicitation count of the indictment in this case cannot be fairly characterized as a single "transaction," in whatever sense the majority uses that term.

As we have previously made clear, the scope of a particular crime—or precisely what constitutes a single offense or unit of prosecution—whether it is limited to a discrete act or includes an entire course of conduct, is a matter for the legislature in defining the crime. See People v. Abiodun, 111 P.3d 462, 464–65 (Colo.2005); see also Quintano v. People, 105 P.3d 585, 590 (Colo. 2005); Woellhaf v. People, 105 P.3d 209, 215–20 (Colo.2005). While some jurisdictions may define the crime of solicitation to include every act of soliciting others to accomplish the same criminal object, in effect mandating the merger of all such acts, see Model Penal Code §§ 5.02(1), 5.05(3) (1962), Colorado is not one of them.

Despite the legislature's decision to treat as a single crime of solicitation any number of methods used to persuade another person to commit a felony, the terms of its statute simply cannot be construed to include, as a single offense, disparate acts, soliciting different people, on different occasions, over a lengthy span of time, and with different inducements, which are related to each other only by their ultimate object. And while the majority notes the possibility of a "platform" solicitation, in which a number of individuals may be solicited by a single communication, see maj. op. at 640, in no sense could all of the evidence of solicitation admitted at the defendant's trial be explained as such a single act. Even the majority appears unwilling to find that the various acts of solicitation committed by the defendant over the period included in the charge constitute no more than a single crime of solicitation.

Although the majority protests that it does not determine that all of the acts of solicitation evidenced at trial constitute a single unit of prosecution, it apparently believes that as long as they all constitute a single "transaction," the effect on the defendant's entitlement to an election remains the same. It is far from clear, however, precisely what the majority intends by a single "transaction." At times the majority appears to mean something akin to the evidentiary concept expressed by the term "res gestae." *See id.* at 641 ("In the context of this case, the People's statements identifying the specific individuals with whom Melina spoke regarding his intent to have Bueno killed serve as corroborating evidence of his intent, not evidence of multiple acts of solicitation."). At times it appears to intend that the scope of a "transaction," even understood this way, is contingent upon the prosecution's theory of the case or its intent in introducing evidence of other crimes. *See id.* at 641–42 ("We conclude that the People referenced Melina's conversations with several individuals to corroborate his intent to have someone kill Bueno, not to suggest that Melina had committed several crimes of solicitation."). And at times it even appears to blur the distinction between a "transaction" and a "unit of prosecution" altogether, equating the lower courts' findings of "a single ongoing solicitation" or "a single solicitation of many people" with its own "transaction of solicitation." *See id.* at 637 ("Our review of the record supports the trial court's and the court of appeals' conclusions that the prosecution's theory and the evidence presented amounted to a single transaction of solicitation by the defendant to kill one victim."). In general, however, it appears to have in mind a criminal episode, comprised of an act or series of acts for which a defendant is entitled to be prosecuted in a single proceeding. *See* Crim. P. 8(a); § 18–1–408(2), C.R.S. (2006).

Its assumption that a defendant is not entitled to an election among acts constituting a single criminal episode, even though they may be separate crimes satisfying a single count of the charge, however, appears to be premised on a misreading of our prior holdings. *See* maj. op. at 641. In *People v. Collins,* upon which the majority primarily

relies, we held simply that a defendant who is charged in separate counts, with multiple crimes arising from the same criminal episode, is not entitled to have the jury's deliberations on each count limited to specific portions of the evidence admitted at trial. 730 P.2d 293, 301 (Colo.1986); *see also People v. Jacobs,* 91 P.3d 438, 443 (Colo.App. 2004). A defendant is clearly entitled to have each offense arising from the same criminal episode charged in a different count of a single prosecution, Crim. P. 8(a); *cf. Woellhaf,* 105 P.3d at 218 (making clear that prosecution may charge separate offenses of sexual assault on a child arising from a single course of conduct or criminal episode), and we have never suggested that he could be deprived of that right without entitling him to force an election of acts or receive a special unanimity instruction, *see Thomas v. People,* 803 P.2d 144 (Colo.1990).

In any event, however, the acts of solicitation evidenced at the defendant's trial cannot be fairly characterized as a single transaction, any more than they could constitute a single unit of prosecution. In determining whether various acts are part of the same criminal episode for purposes of compulsory joinder, we have typically emphasized such factors as time, place, and circumstances, as well as interrelatedness of proof. *See, e.g., People v. Miranda,* 754 P.2d 377, 380 (Colo. 1988) (citing *People v. Rogers,* 742 P.2d 912 (Colo.1987)). Similarly, for purposes of the evidentiary concept of res gestae, we have emphasized relatedness in time and nature and the extent to which evidence of all of the criminal acts is essential to provide a full and complete understanding of the events surrounding a single crime. *See, e.g., People v. Quintana,* 882 P.2d 1366, 1373 (Colo.1994). In neither context have we been willing to categorize as a single transaction such disparate acts, committed with different people, in different locations, and spread over such a lengthy span of time. *See, e.g., Miranda,* 754 P.2d at 381 (not same episode where drug transactions occurred six days apart); *People v. Rollins,* 892 P.2d 866, 873 (Colo. 1995) (three other sexual assaults on same victim not part of res gestae where they occurred over three-month period).

As the majority's own summary of the evidence demonstrates, many of the acts of solicitation evidenced at the defendant's trial, although sharing a common purpose, were distinct episodes, or "transactions," committed at different times and places, virtually without interrelatedness of proof. Whatever the prosecution may have intended, a reasonable juror could easily have found the instructional requirement of attempting to persuade "another person" from the defendant's separate statements to, for instance, Osbourne or Cruickshank, not to mention his separate conversations with Lopez and Padilla. All of the defendant's separate communications to these four individuals, as well as his many separate platform-like solicitations in general, could not possibly be related as a single transaction unless any solicitation to accomplish the same criminal objective were so characterized. I therefore could not agree that the all of the acts of solicitation evidenced at trial were part of a single criminal transaction, even if I considered that to be of consequence for resolution of the defendant's assignment of error.

## II.

I nevertheless would also hold that the trial court did not err in failing to order an election or give a special unanimity instruction in this case. Whether or not solicitation is the type of crime for which an election or unanimity instruction could ever be appropriate, I believe a criminal defendant waives any entitlement to either by not making a timely assertion of that right. Both because I could not affirm the defendant's solicitation conviction for the reasons given by either the majority or the court of appeals, and because I believe that prior comments by this court have been misread to suggest that a failure to move for an election simply limits appellate review to a search for plain error, I write to express, in some detail, my understanding of the election doctrine that has developed in this jurisdiction for the special circumstances presented by offenses of incest and sexual assault on a child.

An information or grand jury indictment is sufficient as long as it gives the defendant enough notice of the charge against him, and the acts upon which it is premised, to enable him to prepare a defense and plead the resolution of the indictment as a bar to subsequent proceedings. *People v. Tucker*, 631 P.2d 162, 163 (Colo.1981). Although the time frame in which a crime is alleged to have been committed may be important in notifying the accused of the particular acts he is accused of committing, the charging document itself need not specify the precise date of an offense unless it is actually a material element of the crime. *Roelker v. People*, 804 P.2d 1336, 1340 (Colo.1991) (citing *Kogan v. People*, 756 P.2d 945 (Colo.1988)). And while a bill of particulars cannot save an insufficient indictment, *Tucker*, 631 P.2d at 164, and is clearly not a device the purpose of which is to compel disclosure of the evidence upon which the prosecution intends to rely at trial, it is a device available to defendants to further aid them in identifying the particular criminal acts they are charged with committing; assist in the preparation of a defense against those charges; and avoid prejudicial surprise. *Erickson v. People*, 951 P.2d 919, 922–23 (Colo.1998); *Kogan*, 756 P.2d at 952; *People v. Dist. Court*, 198 Colo. 501, 503–04, 603 P.2d 127, 129 (1979); *Balltrip v. People*, 157 Colo. 108, 112–13, 401 P.2d 259, 262 (1965).

As a matter of form, a defendant is also entitled to have each offense that is alleged against him charged in a separate count. *See* Crim. P. 8; 24 James Wm. Moore, et al., *Moore's Federal Practice* § 608.04[1] (3d ed. 2006) ("[Fed.R.Crim.P. 8(a)] requires that there be a separate count for each offense. This is intended to prevent duplicity, or charging two or more separate offenses in the same count of an indictment."). Any count charging the commission of more than one offense is therefore subject to challenge as duplicitous. *Marrs v. People*, 135 Colo. 458, 462, 312 P.2d 505, 508 (1957) (A duplicitous indictment "join[s] two or more distinct and separate offenses in the same count."). It was well-settled, however, long before adoption of the rules of criminal procedure, and remains the case today, that an objection on the grounds of duplicity must be raised, at least in the absence of good cause, before trial. *Russell v. People*, 155 Colo. 422, 426, 395 P.2d 16, 18 (1964); *Warren v. People*, 121

Colo. 118, 121, 213 P.2d 381, 383 (1949); *Critchfield v. People*, 91 Colo. 127, 131, 13 P.2d 270, 271 (1932); *see also United States v. Technic Servs.*, Inc., 314 F.3d 1031, 1039 (9th Cir.2002); *United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir.2001) (stating that "the prohibition of duplicitous counts is embodied in [Fed.R.Crim.P. 8(a)]" (quoting *United States v. Berardi*, 675 F.2d 894, 897 n. 5 (7th Cir.1982)); *United States v. Elam*, 678 F.2d 1234, 1251 (5th Cir.1982) (noting that Fed.R.Crim.P. 12(b), which mandates that motions alleging defects in the indictment or information "must be raised before trial," grew out of the common law approach to duplicity). Although it has been noted that duplicity in charging can prejudice a defendant in the shaping of evidentiary rulings, in producing a conviction on less than a unanimous verdict as to each separate offense, in determining a sentence, and even in limiting review on appeal, 4 Wayne R. La-Fave, *Criminal Procedure* § 19.3(c), at 775 (2d ed.1999), there are nevertheless clear risks associated with objecting to a charge as duplicitous before jeopardy attaches and potential advantages in not doing so, which introduce an element of tactical choice into the exercise of timely duplicity objections.

Even though a particular count of an indictment may allege, on its face, the commission of no more than the elements of a single crime, depending upon factual specificity and the time range over which the charge is alleged, that count may nevertheless encompass the commission of more than one criminal offense. The elements of a single statutorily-defined crime can, of course, often be committed more than one time and in more than one way by the same person. *See Abiodun*, 111 P.3d 462. Without complying with the evidentiary limitations on uncharged criminal misconduct, *see* CRE 404(b), evidence of a number of unrelated criminal acts, any one of which might be adequate to satisfy the elements of the charge, may therefore be admissible at trial.

Certain crimes, by their very nature and the limited capacity of their victims, pose a greater than normal tension between the interests of defendants in knowing with specificity the charges against them and the interests of the state in protecting an especially vulnerable class of victims. With crimes like sexual assault on a child or incest, for example, it is often extraordinarily difficult, if not impossible, to identify and differentiate the individual acts of abuse of which some evidence exists, even with the aid of a bill of particulars. Rather than allow these crimes to simply go unprosecuted, we have long found defendants in these situations to be adequately protected, even when charged in counts too general in time and factual detail to be limited to a single prohibited act, as long as the defendant is given an opportunity to demand, sometime before jury deliberations begin, the election of a specific act upon which the prosecution will rely. *See People v. Estorga*, 200 Colo. 78, 81, 612 P.2d 520, 523 (1980); *Laycock v. People*, 66 Colo. 441, 444, 182 P. 880, 881 (1919).

Recognizing that in cases involving the repeated sexual abuse of very young children, the problem of differentiating the various acts of abuse often remains even after presentation of the prosecution's case, we have further held that in certain of those cases a defendant may also be adequately protected by a special unanimity instruction, in lieu of an election by the prosecution. In those instances in which the trial court can determine that the evidence does not present a reasonable likelihood of disagreement among jurors about which acts the defendant committed, and the prosecutor is unable or unwilling to try and designate a particular act upon which to proceed, the trial court may, in its discretion, instruct that in order to convict, the jury must either unanimously agree that the defendant committed the same act or acts or that he committed all of the acts described by the victim and included within the time period charged. *Thomas v. People*, 803 P.2d 144, 153–54 (Colo.1990). In allowing such a procedure in these limited cases, however, we have emphasized that the facts of the individual case must first be evaluated to ascertain whether or not an election by the prosecution is essential to accord the defendant due process.

While we have therefore sought to preserve greater flexibility in the charging of this class of offenses, by permitting the

charge to remain more general as long as the defendant is given an opportunity after presentation of the evidence against him to further narrow it, we have never held that a criminal defendant has a constitutional right to jury agreement that he committed a particular act satisfying the charge, or even that he committed the offense in one of a number of alternate ways alleged in the charge. On the contrary, we have long accepted the adequacy of a general verdict where alternate ways of committing an offense were charged in a single count, *see James v. People,* 727 P.2d 850, 852–54 (Colo.1986); and although for a time we found fault with a general verdict if one of these alternatives was submitted to the jury without sufficient evidence, in light of the Supreme Court's clarification in *Griffin v. United States,* 502 U.S. 46, 50–51, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (general verdict of conspiracy adequate despite insufficient evidence of one of the several objects of the conspiracy charged in the same count of the indictment), we have abandoned even that objection. *People v. Dunaway,* 88 P.3d 619 (Colo.2004). By the same token, it is well established that consensus as to the defendant's course of action or the particular conduct by which he actually committed an offense is not required. *See Schad v. Arizona,* 501 U.S. 624, 631, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *see also Griffin,* 502 U.S. at 56, 112 S.Ct. 466 (noting that "an indictment charging murder by shooting or drowning, where the evidence of drowning proves inadequate," does not implicate constitutional concerns); *Andersen v. United States,* 170 U.S. 481, 503–04, 18 S.Ct. 689, 42 L.Ed. 1116 (1898).

The requisite degree of jury agreement on any individual count that is guaranteed by a criminal defendant's right to a jury trial is easily confounded with his due process right to an adequately specific charge. *See Griffin,* 502 U.S. at 48–49, 112 S.Ct. 466 ("[B]ecause the alleged defect here is not that a jury determination was denied but rather that a jury determination was permitted," the question properly fell under due process rather than Sixth Amendment scrutiny.). Our decision to permit a defendant to demand an election of a specific act or a so-called unanimity instruction in the prosecution of sexual assaults of a certain nature clearly addressed the due process, rather than the Sixth Amendment, concern. *See Quintano,* 105 P.3d 585, 592–95 (Colo.2005). Unlike a number of other jurisdictions,[7] we have found that a defendant's right to due process can be adequately protected, at least in these kinds of cases, despite less pre-trial detail, by insuring his ability to limit the scope of jury deliberations at a later stage. Our heightened concern for the defendant's ability to adequately prepare a defense and for jury unanimity in the context of prosecutions in which he has been more than normally restricted from focusing the charge at the pre-trial stage was never intended to imply that criminal defendants in general have a right to jury agreement on a particular act.

Whether the charging of more than one offense in a single count is apparent on the face of the charging document, and therefore clearly amounts to duplicity, *United States v. Gordon,* 844 F.2d 1397, 1400 (9th Cir.1988) ("[A] duplicity claim is directed at the *face* of the indictment and not at the evidence presented at trial."); *see Critchfield,* 91 Colo. at 131, 13 P.2d at 271 ("If the information is duplicitous, that fact is patent . . . ."), or it becomes apparent only after presentation of the evidence that the charging language includes multiple commissions of a single charged offense, any right the defendant may have to insist upon narrowing the charge is waived unless it is timely asserted. *See Laycock,* 66 Colo. at 444, 182 P. at 881 ("[T]he people may, *on motion,* be compelled to select the transaction upon which they depend for a conviction.") (emphasis added); *cf. Thomas,* 803 P.2d at 152 ("The prosecution

---

7. *See, e.g., Cooksey v. State,* 359 Md. 1, 752 A.2d 606, 618 (2000) (holding that a single count charging multiple sex offenses, other than in course of single criminal episode of relatively brief temporal duration, cannot be sustained as non-duplicitous and rejecting State's suggestions that elections or unanimity instructions can cure duplicity). After *Cooksey,* the Maryland legislature passed Md.Code Ann., Crim. Law § 3–315 (West 2006), defining "continuing course of conduct against child" as a single criminal offense. Lynn McLain, *Reforming the Criminal Law: University of Baltimore Law Group Goes to Annapolis,* 34 U. Balt. L.F. 2, 9–10 (2003).

may be compelled to select the transaction on which it relies for a conviction." (paraphrasing *Laycock)* ); *Estorga,* 200 Colo. at 81, 612 P.2d at 523 (same). As we have previously suggested, a defendant's right to an election even before putting on his case may depend upon the nature of the specific case and potentially viable defenses, but it is clear that a defendant must move for an election sometime before the jury is instructed if their deliberations are to be limited to the consideration of particular acts. Because our jurisprudence has sanctioned a special unanimity instruction of the kind to which the defendant in this case belatedly claims entitlement *only* if the prosecution is unable or declines to make an election after being requested to do so, *see Thomas,* 803 P.2d at 154, any right to such an instruction is necessarily waived by failing to timely move for an election.

Upon waiver of the right to either an election by the prosecution or agreement of the jurors on the specific act upon which its verdict is based, a trial court obviously has no duty to so instruct the jury, and a failure to do so is therefore not error at all, plain or otherwise. While we have never before had occasion to distinguish so directly a defendant's right to narrow the charge within a single count and his right to jury agreement of his guilt as to that count, our reference to the plain error standard in two cases involving a trial court's failure to force an election has sown confusion among the judgments of the intermediate appellate court. *See Woertman v. People,* 804 P.2d 188, 192 (Colo.1991); *Roelker,* 804 P.2d at 1339–40. In neither case, however, did we find plain error for merely failing to force an election or give a special unanimity instruction, in the absence of a timely request.

In *Woertman,* we reversed the defendant's convictions for sexual assault on a child after announcing that we were reviewing for plain error, but we did so only because the trial court also admitted evidence of over fifty separate acts, despite a bill of particulars limiting the charges to three specific acts, and not only failed to limit the purpose for which the additional acts could be considered but actually instructed the jury that it would be sufficient for conviction to find any act

that was committed within the three-year statute of limitations period. Because we were concerned about the jury's inability to distinguish charged from uncharged misconduct, we did not address the trial court's failure to order an election, separate and apart from its unobjected-to instruction on timing and its failure to limit, sua sponte, the jury's reliance on uncharged acts. Although our opinion is therefore silent regarding any defense motion for election, the published court of appeals opinion makes clear that such a motion was actually made and denied. *People v. Woertman,* 786 P.2d 443, 446 (Colo. App.1989) ("Thus, we hold that the trial court did not err in denying the defendant's motion to require that the People elect specific acts.").

In *Roelker,* the defense counsel filed a motion prior to trial to compel the prosecution to individualize and select specific acts, which was partially granted. In response to the motion, the prosecution was required before trial to limit its proof to a period of several months and, later at trial, to a single month. Because no objection was made to the court's ruling in response to the defendant's motion to elect, we indicated that it would be reviewed for plain error; however, rather than reviewing solely for plain error, we immediately found the error to be harmless, in light of the trial court's ultimate restriction of the evidence to a narrow time frame that included only the events surrounding a single transaction. As we would later do in *Quintano,* 105 P.3d at 592–95, we clearly treated the defendant's pre-trial motion to select specific acts as an adequate invocation of his right to further narrow the charge against him. Our fleeting reference to plain error therefore did not set a standard of review for failing to order an election in the absence of a request to do so, but at most indicated the proper standard for challenging an unobjected-to ruling purporting to grant a motion to narrow the charge.

The defendant asserts that the single solicitation count with which he was charged includes at least two independent acts of solicitation that were evidenced at trial, and therefore he was entitled to a special unanimity instruction to insure juror agreement

as to one or both of these acts. Although I agree that there was evidence at trial of more than one crime of solicitation, from which the jury could have found the defendant guilty of the single charge of solicitation, the trial court had no duty to specially instruct the jury in this case because the defendant's right to an election, even if one existed, would have been waived by his failure to timely assert it. In the absence of any right to demand unanimous jury agreement on a particular act of solicitation, the trial court's failure to so instruct the jury was not error at all, much less plain error.

Although I do not join the majority's opinion, I therefore concur in its judgment to affirm.

I am authorized to state that JUSTICE RICE joins in this concurrence.